Mr. Hamill, whenever you're ready. The appeal is from trial judges orders to respond to a dismissing to post of two collateral petitions filed by the defendant petition for relief for judgment and a petition for post conviction relief and the judge dismissed both of these petitions on ground solely on grounds that they were filed in violation of the defendant's plea agreement. Did the judge say dismiss or strike? And if she said strike, is there a difference? I don't believe there's a difference. I think the judge said strike. But the there is as far as I can find, there is no legal difference between striking a petition and dismissing it. Well, hang on a second. If you're dealing with a post conviction petition, doesn't that mandate the judge self determine whether it's paid when it's frivolous or failing without merit and then enter an order of dismissal within 90 days? Well, that's correct. In terms of the post conviction petition. And that's one of the issues that are raised in the brief is that the post conviction petition here, the Post Conviction Hearing Act only allows a summative dismissal within the first 90 days if the didn't happen here. I'm sorry. That didn't happen here. I don't believe it wasn't part of your arguments that it was improper for the judge to do that. Correct. Correct. That was correct. And that's and the issue is whether or not being in violation of a plea agreement makes a petition frivolous and failing without merit. And I don't think it does. And the reason for that is, is that under People v. Eau Claire, not every defect in a post conviction petition makes that petition frivolous. Now, are you attacking the admonitions of the trial judge as well as being insufficient? I am in the alternative. The first two issues in the brief are purely procedural, and they both assume that even if the judge was correct, that the plea agreement violated this petition filed with the plea agreement, she still would be required to follow the procedural rules of 214-01 and the Post Conviction Hearing Act. And since she didn't follow neither, both of these dismissals should be reversed and decisions sent back for further proceedings solely for that reason. And the 214-01 was improperly dismissed or struck because the time frame wasn't followed and the state didn't really have a chance to do anything, right? Correct. And this case falls directly under the holding of People v. Laffern in that, at least with respect to that petition, where the petition was filed on March 7th. It was struck on March 20th, so it's only 13 days, and that's premature under Laffern. And the remedy for that is to remand the cause for further proceedings. If the state had not said something about, do you want us to file an answer, and a transcript instead had said, we're not going to file an answer, would we still have to wait the 30 days? Yes, yes, I do so. And that's not addressed in Warren, but it is addressed in the appellate court in People v. O'Conn, where in O'Conn the court found that the state, having appeared in court and declining to file an answer, had waived their right. But when they did, that started the 30 day clock. So the 30 day clock still didn't run in this case. Also, the exhibit, I would point out the exhibit that the state did file was filed 14 days after the judge had already struck the petition, so it could not possibly have affected the judges, whether or not the judge followed the... It appears that the judge had an independent recollection, correct, of this case? That's correct, that's correct. Let me ask you, getting back to a threshold procedural question, you're aware of the Supreme Court's decision in People v. Carter regarding service? Absolutely. How is the service in this case in compliance with that decision? Well, and that's a difficult question. Carter has a difficult opinion to apply here, because in Carter... Well, first of all, let me first say that the certificate of service in this case is, from what I can tell in the opinion of Carter, identical. With regular mail, regular institutional mail? Correct. I placed it in institutional mail to be mailed. I'm not sure if it said regular mail, but I don't think the one in Carter said regular mail either. I think it just said institutional mail. Either way, it is identical. However, the difference between this case and Carter is that the judge in Carter had waited 30 days. The only way the defendant was entitled to relief was if his service was insufficient. So the defendant was arguing that his service is insufficient, and the Supreme Court did something in that case that I'm not sure I've seen them do before. They predicated their holding on that fact. They said, in the case where the defendant seeks to benefit from his own must affirmatively establish that his service was in fact deficient, and they found that this proof of service that is identical to what we have was not sufficient to prove that insufficient service. Could the state waive defective service? Yes, they could. Yes, they could. Did it arguably get waived in this case? If they did, it happened on March 20th, and at that time, the 30-day clock would start running on March 20th. It would actually put us earlier in the 30-day clock than we already were. So it would be premature regardless of whether the state waived in this case. The only thing I can say about Carter is I don't know what Carter says you're supposed to do when the defendant is not relying on his own bad service to obtain relief. Because here, if our service is sufficient under the rule, the defendant should obtain relief. It the service was deficient, then it should be remanded because the 30-day clock had not yet begun. You're distinguishing Carter. That's your attempt to distinguish Carter. That's correct. Because if you don't, it does provide ostensibly an impediment to your argument, doesn't it? No. Actually, if I could say under Carter my service was sufficient, then this would be more straightforward, and still the end result would be that it would be remanded. If you could say under Carter that the record here shows sufficient service, then the 30-day clock started on February 25th, the day that the defendant had put on his certificate and had not yet run on March 20th when the judge struck the petition. That would be the straightforward application of Carter. You know, I think we understand the technical requirements of 21401 in the Post-Conviction Act, but I was intrigued by your first argument that the admonitions would have been insufficient. Obviously, you would agree as a preliminary legal matter, a defendant can waive the right to collaterally attack a defendant, correct? I mean, there's a case law that says that. Correct. Your argument is more subtle. Were the admonitions correct? But in looking at this, the judge essentially says, look, you're agreeing to this, you're waiving any and all right to attack this judgment in any way for the rest of your life. That seems pretty broad. Now, you could argue that, well, the judge didn't go through all of the, you know, permutations with post-conviction, with habeas corpus, 21401, but there is no Supreme Court rule or statute that says prescribe certain admonitions when a judge is doing this, is there? There's no Supreme Court rule, but there is people versus fearing. And I believe people versus fearing applies here. Now, fearing would involve the waiver of a direct appeal, but the same principles would apply to the waiver of the right to file collateral petitions. Fearing, the whole thing with fearing is that there's not, it's not enough to just say you have some rights out there and you're waiving them. You have to actually tell the defendant what those rights are and then tell them who's waiving them. So the judge would have to go through each potential, each and every potential collateral attack and give them the fine legal principles of each one? Well, fine legal, I don't think it requires fine legal principles. In theory, it only required them to say you have a right to appeal. You have a right to an attorney on appeal and you have a right to a transcript and the court held that that was sufficient. So it's not, you know, every little detail, but it is enough to identify the right to, to give the defendant some idea of what he is giving up. There are only three collateral petitions recognized by Illinois statutes, so it's not a huge list. So you're suggesting the judge should have gone through the three forms of collateral attacks? I believe that should be the legal requirement. I, yeah, and I don't think that's too much to ask in a situation like this. I mean, it's simply, you know, you have a right to a post-conviction petition. Did you understand that? Maybe add on, you know, you would have the right in a post-conviction petition or in one of these collateral petitions to bring you evidence to challenge your guilty plea because you're giving this up, you're not going to have that right. You don't have any authority for that though, right? Well, that would be, that would essentially fit with what the court said was sufficient in fearing. Because the joke did do that in fearing, I don't think you can say that fearing sets the floor for what's required, but the floor is somewhere above, you have some rights out there and you're, you're essentially waiving them. And that's what we have here. Yeah. I'm curious because, all right, you have the right to file a post-conviction petition that assumes that he or she knows what that is. You have the right to file a 214-01 that assumes that he or she and the attorney, because it's, it's, it's a civil remedy that we've now applied to criminal court and have, maybe they understand habeas corpus from television because you see more of that. But I just finished teaching a three hour course to judges on post-conviction relief and I didn't get it all in because they had How do we expect defendants to go, oh yeah, I understand what a post-conviction is. And oh yes, I understand that you're telling me I can't file that. I mean, just mentioning what they are and giving them a nut, you know, a thumbnail sketch, how is that going to help this process? Because it's still more than not telling them that at all. And it's still giving them some idea that there is, there is, there is something that they can do that they're giving up. In this case though, he was represented. He was. His attorney said that he thought the defendant understood, right? Had talked it over with him and thought that he understood. That's correct. And the defendant said that he understood. He did, and the court asked him that several different times. Correct. But I believe that all those things isn't true in the fearing. So, and would not be enough. There's still, what fearing requires is some emotion above and beyond that. And in addition to that, I think the more important half of this issue is that the terms of the agreement that were stated in open court by the state's attorney on two different occasions did not call for collateral petitions to be dismissed. In fact, what the state's attorney told the defendant twice on the record in two separate hearings was that if he were to do anything to attack his plea, his plea would immediately be vacated and he would be subject to the death penalty again. That is the remedy that was bargained for. And that's the only remedy that's been put on, that was put on the record for this situation that we have here where the defendant has filed his petitions. Now, when you say, but I think you just said if you do anything to impact your plea, wouldn't that include a collateral? Correct. So based on what the state's attorney told the defendant on the record and what, based on what, and what the defendant said he agreed to, what should have happened when he filed a collateral petition was that the state's attorney would have the opportunity to vacate the plea. I thought that colloquy had been more concerned with him attempting to escape as opposed to filing a post-eviction petition. In other words, violating the plea agreement in that context. That was in there too. You're correct. But the state's attorney, and obviously it was a different situation in 2007 than it is today, but when situations change and a term of an agreement becomes less beneficial to the state, their options are to enforce the agreement or not enforce the agreement. They can't rewrite the agreement a decade later to give themselves a more, a remedy that's more to their liking. So they should be held to the agreement that they, that they stated on the record. If, if you were to reach the merits of this and, and they should either, you know, well, if they want to enforce the agreement, then that's what should happen. They should vacate the plea and seek the death penalty. We don't have a death penalty anymore. So what do we do? Well, I would recommend that they perhaps not enforce the rise of the plea agreement. That's the, you know, they bargained for it. They don't like it anymore. They don't have to enforce them. Well, because it's not, it wasn't their doing that. We don't have it. Does that mean that we don't have a valid contract anymore? If that's the case, then the remedy would be to vacate the plea. So, and then what? Oh, well, and then it would go back to, to square one, which is what the defendant is seeking. What if it was sent back for further proceedings under the two, the two remedies that were being sought? Is, is that not a viable option here? I believe it is a viable option because I believe that in the second stage of post-conviction proceedings, in particular, the state has the option of not enforcing its agreement. Just as you know, under Beauclair, the state had the right not to, not to seek dismissal for untimeliness. And that was one of the big reasons why the Supreme Court in Beauclair found that it was, you know, filtered to similarly dismiss the petitions on that ground. So you're saying it gets to the second stage because the court improperly dismissed it in the first stage? Correct. And then in the second stage, the defendant can make, you know, what, you know, have a counsel claim and make whatever arguments he can make to, you know, that this plea was involuntary and the state can respond to those arguments. That's... You'll have an opportunity for response. Thank you. May it please the court, counsel. Good morning. Your Honor, if, if it would be amenable to you, I'd like to pick up where the discussion was on people be fearing and whether or not that was analogous to this instance situation. The facts that people be fearing in terms of the procedural and the rules that fearing dealt with are different than this instance. In fearing, it discussed a valid waiver of appeal rights. Now under appeal rights, that's governed by Supreme Court rules 605. There are a set number, excuse me, there's a set... Described set of admonitions. There's a specific set of admonitions to the appeal rights. And so that, that's why there can be substantial compliance, which is what fearing found, that there was substantial compliance, that he knew that he was waiving those appeal rights. There's no rules that govern Supreme Court rules that govern post-conviction collateral litigation. There's no statutes either. I mean, this is sort of like a better term of freestanding admonitions in the context of what is required. Correct. Exactly. Your Honor. And as the people cited in the two cases that came out after the people found it's brief, people be McCaskill and people be Reed. Those citations were set forth in our motion to set additional authority, but people be Reed is 214 LF 3rd 130296. And people be McCaskill, which is from this court, 214 LF 2nd 130571. Both of those cases discuss the issue that the difference between fearing and So therefore, assuming the argument doesn't worry your position is correct. How did the judge then comply in this case? Sure. Similar to people be Reed where they found that layman's explanation was appropriate for explaining what you were waiving in collateral rights. The judge in this case was very specific as to the layman's approach as to what collateral rights included. And she went through very thoroughly. This starts on page 487 of the record and go to page 490. The court says, you are giving up any right to attack these judgments at a later date. The defendant agrees that he understands that. And if you file a motion, you will violate your promise not to do so, and you will violate the plea agreement. The defendant says yes. They continue to go on. The court says at the end, you're also giving up any right in the future to initiate any proceeding which attacks the judgments for any reason whatsoever. So your argument is simple. Any and all proceedings means any and all procedures. That is correct. You don't have to go through the individual, every individual remedy. And I believe it's Justice Hutchinson emphasized. It's very difficult and collateral litigation to go through any and all proceeding that presumes that defendant understands what's available to them in a post conviction litigation that a defendant understands what's available in 214-01, that the defendant understands the difference between a federal habeas or an Illinois habeas proceeding. What if the defendant writes a letter to the judge saying, I don't understand this? Is that an attack? That would be an attack that something that fearing might potentially permit. In fearing what the court said was, the record needs to make sure that the defendant understands the circumstances and nature of the appeal or collateral proceedings waiver. If the defendant were to write something of that nature, depending upon the circumstances of that case, that might give rise to the litigation, which is before us, before this court right now. Did the defendant have a valid collateral appeal, collateral waiver that's valid and enforceable? That is the issue before this court. If this court were to find that the waiver for collateral litigation was valid and enforceable, any issue on dismissing versus striking versus, you know, 214-01, those issues are removed. It would be a hollow victory to send it back down only for the court to say the plea agreement is enforceable. I cannot hear that. Well, but isn't there then a second step that would be considered if it's voluntary and if it's knowing, wouldn't we then under, what is it, Edgston, have to look at the underlying pleadings to determine if there is a, what is it, a substantial constitutional deprivation, which was decided by this court within the last couple of years? Respectfully, in Edgston, it's a very unique set of circumstances. In Edgston, the issue was whether or not the defendant could bar, could bargain away his future right to a collateral litigation. In that instance, the court went through an analysis similar to this court. Did counsel give poor advice? The court found that the counsel gave poor advice because in Edgston it was an issue of whether or not the defendant could be subject to felony murder for a prior plea agreement. And the court found that his plea was not, you know, his waiver was not voluntary because counsel provided deficient advice. Additionally, the court found that defendant had no, was given no consideration for his waiver. So in those situations, it's not as looking at the merits of the plea, that was looking at whether or not his plea was voluntary and he understood all that he was giving up. What about if he's alleging that he got improper advice, sir? Doesn't he still end up in the same place? How do we know that? We're not the trier effect, are we? You're not the trier effect, but in this case, he didn't, he didn't allege improper, um, ineffective advice. His post conviction does allege that his attorney was, um, not, it wasn't proper representation because he didn't seek a mental health, um, defense. Right. So that it's not necessarily wrong advice. It's just that he did not seek. And he also says that his attorney, um, along with the state's attorney yelled at him and forced him to enter this plea at a time when there was a death penalty moratoria. Not that it was gone at that point, but a death penalty moratoria. So he's got, well, he does have bad advice because he didn't know about the death penalty moratoria allegedly and this mental health, um, defense. Um, respectfully, I, I believe Edgerton speaks of the ineffective assistance of counsel regarding that waiver of the collateral and appellate, the collateral and appellate rights. Um, the issue raised under the defendant would be about the voluntariness of that actual plea, which is, you know, at this point, um, would be different under Fearon, which is a defendant can, and in fact, waive the appellate and collateral rights. That, that would be the distinguishment, um, that would find in Edgerton and, um, between this instant case. That's a different point. What about the trial court's ostensible non-compliance with technical requirements of the Post-Conviction Act in 214-01? You would have to agree you don't strike post-conviction petitions. Do you? Well, in this case you would because the defendant was out without authority to file pursuant to the plea agreement. Um, respectfully, opposing counsel today says he does not believe that there is a difference between striking and dismissing. However, his brief is predicated on the fact that a defendant or the court cannot strike a petition in 214-01. Um, it's our position that striking was appropriate. It kept the plea agreement intact, which was defendant bargained away his appeal, his right to waive a, um, an issue, a substantive issue for merit. By striking the petition, it permitted the court to keep the plea intact, to not permit him to have a substantive review of those issues. But isn't there a fine distinction between bargaining away and whether that bargaining away was done knowingly and if you throw it out, you strike the petition? Well, under fearing, you reach it in the appellate court, which is what you, you know, in fearing, you reach it in the appellate court. In the Kaskin, in this case, you reached it in the appellate court. And many of the cases cited, those issues are raised in the appellate court. Um, if the defendant had raised something of that at the trial court, potentially that could have been something that they had dealt with in the The court ostensibly didn't follow the technical parameters of the post-conviction in 214-01, because as you know, the court is supposed to, in the average post-conviction petition, rule whether or not it's frivolous or patently without merit, right? It's an order. It's not dismiss, not a striking of the pleading. And you're saying that that was okay here. Why? Because, um, the plea agreement stated that he was not to file any collateral proceedings and if you file, if you dismiss a petition and it becomes for frivolous or patently without merit, the court is essentially ruling on a substantive issue. And that he's, they're reading the substantive nature of the pleading and finding that it's frivolous or patently without merit. The defendant was saying that he, let's assume that the same facts, the allegations of the post-conviction petition was that the defendant was coerced. Somebody put a gun to his head and signed off on an agreement. And your answer is, it's okay. He said he was signing off. So therefore the ball game's over, right? Does that make sense? That doesn't, yeah, that does make sense. It makes sense. Except multiple courts for an extensive length of time has found that a defendant may bargain away his appeal and collateral rights. If it's commentary, right? How would you know that if you strike a petition, you never deal with the allegations? In this, in that argument then, a defendant can always file a post-conviction petition, presumably because we can, we would have to look and see whether or not that issue is raised. Here, we are looking at it. We're seeing it at the appellate level. We're given the opportunity to raise that issue. Here, it is very clear that the court, in layman's terms, explained what collateral litigation and post-conviction litigation entailed and that he was waiving away that right. The difference between, you know, opposing counsel cited much in Beauclair and Collins and that the court should not be able to dismiss a petition for procedural mechanisms. But in those cases, those are procedural aspects. Those are tininess aspects which a defendant can file for public negligence or just a bar to the litigation. Specifically, they don't, what the court found was that they wanted to know whether the petition had substantive merit. But that is exactly here what a collateral waiver prohibits, raising a substantive merit issue. So under the defendant's argument, we should excuse the fact that he already found that he validly bargained away his collateral right. Send it to the second stage because he cannot, even though this would be a, he waived a substantive merit issue, for him to get to the second stage, that would seem to be not keeping with the spirit of the plea bargain that was entered into by both the state and the defendant. There's two big issues that were bargained away here. One was, which would be against the law anyway, but that the defendant would not try to escape or would not escape from some facility or whatever. And the other was not to file any collateral attack or appeal of the judgment, right? Correct. If he had escaped, what would the state's recourse have been? Well, the state, just like the defendant, are in contract law. If the defendant violates the plea agreement, the state has the right to seek to withdraw the plea because he violated the plea agreement and go from there. And if we still have the death penalty, then the state would have that option of saying, okay, we are not going to seek the death penalty. Sure. If they would go to trial, they could have that claim. Now, isn't the state's remedy though the same for his filing of a collateral attack on his judgment? Isn't the state's remedy there to say, well, judge, let's assume for one moment that we still have a death penalty, but we want to vacate this plea agreement and we want to seek the death penalty. If we had hypothetically a death penalty. Your Honor, I think I'm following this. It seems to me that the whole remedy here that the state actually has is to vacate that agreement. That's not a pleasant remedy under the current circumstances because there's no death penalty, so there's no hammer anymore for the state. But isn't that state's remedy is to just vacate the agreement? That is one of the state's options, which is the state could seek to exercise its right that it bargained for in the plea agreement to withdraw the plea and continue on. However, by using that same analogy and what counsel says, in essence, defendants are going to find that he can unilaterally decide that he can violate the plea agreement and the only thing the state can do is withdraw the plea. You know, he doesn't have to be held to his end of the bargain. He wants his cake and eat it, too. Exactly. And in this instance, you make it false. Right. Well, it would be our position that he validly waited. It's rare. Justice Spencer, you're exactly right. What the defendant is trying to say is I want to have my cake and eat it, too. When I'm done with the plea agreement, I'm going to do something that's in direct violation of the plea agreement. Then I'm going to say, state, you have to withdraw the plea. You can't do anything about it. That's what he's saying. Exactly. Which we don't believe the case law, both in contract law and in the plea agreement law, permits the defendant to do an exercise. Is the state's position that because had he, you had a death penalty, odds are as a dutiful prosecutor under Beauclair, you'd go right to that. But now that it's been taken away from you, you can't enforce your part of the deal. Is that why you're objecting? No, I'm sorry. Okay. Your part of the deal is you do this and we're going to vacate your plea and seek the death penalty because you don't have the death penalty anymore through no fault of your own. Is that why you are not enforcing your part of the bargain? There's a number of reasons. I believe in People v. Dennison, the Illinois Supreme Court said there's a number of reasons that the state may choose to exercise various rights. Some of it is that this is a case that is old. This is a case that it's not as if he pled guilty yesterday and now wants to appeal it. There's a number of years that have taken place between the time the case, and I believe, I don't remember the exact date that the murders were committed, but the defendant fled to Mexico for a number of years, then he was extradited back, then he had a fitness hearing. So retrial in all reality becomes problematic for the state with witnesses and evidence. So there are a number of reasons why that the state would want to adhere to the plea agreement, not just for the death penalty, but for finding witnesses, things of looking at the evidence, and that is the state's choice to be able to But can't the state do that by carefully looking at the allegations in the petition, and if it gets the PCP, if it gets to second stage, make a motion to dismiss based upon valid reasons as opposed to just saying it's a violation. I mean, saying why it's a violation. So respectfully, in order to get there, this court would have to find that the valid, the waiver here was invalid, and then send it back. Both contract law says that we have various obligations and rights, and I believe one of the cases the defendant cited, people being Nichols for stating that, you know, this court could make a number of things while upholding the appeal waiver. In that case, the state explicitly conceded that there were some issues, sentencing credit, and a one act one crime that would be vacated. But that's the state's right to be able to say, you're right, we're going to look past that while upholding other parts of the appeal waiver. That's not the issue. This is not the issue here. We believe that the state's argument there was that I get it, that the fearing exists, and the other cases McKenzie and Edgerton and Nichols all exist. And the public courts do recognize plea agreements that include no appeal clauses, and they do enforce them. But just because these are something that they can, the state can enter into, doesn't really mean that it's such a good idea to do it, in this case or ever. And really, that's what this comes down to, is this was a really bad idea. It is a bad agreement, and now the state doesn't want to pay the price for it. Well, you don't expect us to hold that this was a bad idea, therefore, it's reversed. No, right. And that's why I go through the procedural arguments and the argument regarding the admonishments. But ultimately, at the core of this, is this is just a bad idea, and they shouldn't be doing this, really. And even if they can, they shouldn't. At all, or just in this case? Really, at all. And I think it gets to what Justice Hudson brought up. If this defendant alleged in his petition that everything that happened on the record happened, but there was a gun to his head the whole time, is this court really going to tell him tough luck? And sorry, we can't even look at that because you also agreed not to appeal while the gun was to your head? That's the only time, that's the only time that an agreement like this would have any legal effect, is if the plea, because if the plea wasn't involuntary, then the plea can't be vacated anyway. So unless there is something out there that this defendant is going to allege in the case, this plea agreement, this no appeal, no petition clause, doesn't do anything. It only does something if he actually has a valid ground to withdraw his plea. And if he has a valid ground to withdraw his plea, it has to be under Illinois law, it has to be something serious. And it's not that this court would actually ignore. So ultimately, there is no reason to extend this agreement. There's no reason to give the state benefits that it did not bargain for in this agreement. There's no reason to encourage this kind of agreement. In fact, these agreements should be discouraged because they do nothing but potentially cause grave injustice. So there's no reason to find favor with the state in this case. And I talked about the procedural issues. I believe that the procedural issues all require remands for further proceedings on the petitions. If you do nothing, nothing like the emotions and fearing, fearing did not depend solely on the fact that there was a Supreme Court rule in place, fearing dependent on the fact that it was an important right that was being waived and has to be explained to the defendant, independent of the Supreme Court rules. So your actual position is you think the state should seek to allow the plea to be withdrawn, but you're also recognizing the possibility that there should be some action on the actual petition. Is that correct? Correct. I believe that the state should have the option to enforce it. If they choose not to enforce it, if they choose to enforce it, they can do so in the form of a motion to dismiss following the second stage of the post conviction proceedings or a proceeding. And they can make their claims there. The fed obviously can claim that his, his, um, no collateral petitions clause was involuntarily entered into. And that would be part and parcel to any claim that the plea itself was involved. Isn't there, I mean, it's not brief, but I mean, realistically, isn't there another problem with the two 1401 because of Castleberry? I mean, the petition is alleging a void sentence. Um, yeah, that could end up being a problem. Okay. Yeah. So he's suffering from, he will, he may well be suffering as well from the fact that so much time has passed. He could, he could. I'm going to say, I don't have further questions. Mr. Hamill, this is not on the case. Uh, is your mother enjoying retirement? She is very much too bad. No, I'm glad she is. Wish we could all be there. Thank you. Tell her we said hello. Accordingly, in brief recess to the next case.